Christian J.
delivered the opinion of the court.
It is conceded that the deeds executed by Henderson to his sons are fraudulent and void. At all events, there is no controversy here in respect to so much of the decree of the circuit court as declares them vacated. The real matter of contention is in reference to the distribution of the fund arising from the sale of the real estate conveyed by said deeds.
The circuit court was of opinion, that the creditors who had obtained judgments in the lifetime of Henderson, the debtor, were entitled to be first paid, according to their respective priorities; and that the other creditors who were parties to the suit before the decree of sale were entitled to be paid pro rata out of the balance of the fund. The appellants are creditors, but, with one exception, they are not judgment creditors ; nor were they parties to the suit before the rendition of the decree. These debts were, however, proved before the commissioner subsequently to the date of the decree, and at the following term of the court they became parties more formally by petition.
They do not controvert the preference accorded the creditors by judgment; but they claim that any surplus remaining after the satisfaction of their claims shall be applied pro rata to the payment of all the creditors, without regard to the time of their becoming parties to the suit. This is the main ground of controversy raised in the appeal here.
Our statute provides that a creditor, before obtaining a judgment or decree for his claim, may institute any suit to avoid a gift, conveyance, transfer, or any charge upon the estate of his debtor which he might institute after obtaining such judgment or decree, and he may in such suit have all the relief in respect to *486 such estate which he would be entitled to after obtaining a judgment or decree for the claim which he may be entitled to recover. Code 1860, eh. 179, sec. 2.
Previous to this enactment it was the settled rule of the courts, that a creditor at large could not resort to a court of equity, to impeach any conveyance made by his debtor, on the ground of fraud. If real estate was the subject of the conveyance, a judgment was regarded as sufficient. If goods and chattels or any equitable interest therein, although incapable of being levied on, were embraced in the conveyance, the creditor was required to take out execution and have it levied or returned, so as to show that his remedy at law had failed. Chamberlayne v. Temple, 2 Rand. 384; Kelso v. Blackburn, 3 Leigh 300; Rhodes v. Cousins, 6 Rand. 189; Tate v. Liggat & Mathews, 2 Leigh 84.
Such was the state of the law before the Code of 1849. The enactment before referred to was for the first time incorporated in that code. It was adopted in consequence of the decisions above referred to, and was intended to afford a remedy in the cases designated in these decisions. For the first time the statute is before this court for its true construction. I think there can be no doubt that it was the intention of the legislature to declare that a party creditor who filed his bill to avoid a fraudulent conveyance, acquired a lien upon the property of the debtor conveyed in such void conveyance, if he obtained a decree setting it aside, and in that event the lien-attaches from the day the bill is filed.
The very terms óf the act, as well as the necessity of its passage, growing out of the decisions above referred to, conclusively shows this to be the true construction.
It provides, that “a creditor, before obtaining a *487 judgment or decree for his claim, may institute any suit to avoid a gift, conveyance, assignment or transfer of or charge upon the estate of his debtor, which might institute after obtaining such judgment or decree; and he may in such suit have all the relief in respect to said estate, which he would be entitled to after obtaining a judgment or decree for the claim which he may be entitled to recover.”
It is plain that by the very terms of this statute the creditor, assailing successfully a fraudulent conveyance, is placed in the same position, and is entitled to the same relief, as if he had already obtained a judgment or decree against his debtor. What is that position, and what is that relief? Plainly a lien upon the property of the debtor, just as if he had, at the filing of his bill, already obtained a judgment or decree. The statute places the creditor, who assails a fraudulent conveyance, if he succeeds in vacating it, in the position of one already having obtained a judgment or decree, and his lien subsists from the time of filing his bill.
It is clear that creditors filing a. bill to set aside a fraudulent conveyance acquire a specific lien, and are entitled to priority over other creditors at large.
I am therefore of opinion that the true rule of distribution of the fund in the hands of the circuit court of Lancaster, was to pay first the judgment creditors of Henderson their judgments obtained in his lifetime, according to their priorities; and second the creditors, who, in his lifetime, filed their bill to set aside the deeds to his sons, and those who came into said suit by petition before his death, regarding their liens as subsisting from the date of the filing of said bill or petitions respectively, and the balance, if any, to be distributed pro rata among his other creditors.
*488 I am further of opinion that the said circuit court did not err in refusing to order a re-sale of the land sold by its commissioners upon the ground assigned in the petition of appeal, that it was sold before any account was taken of the debts and liabilities of William Henderson. The theory upon which courts of equity require generally that land shall not be sold until such accounts are taken is, that the creditors are interested in bidding for the land and making it bring its full value, and may not be sacrificed; but in this case it abundantly appears that the land brought its full value, indeed a much larger price than it was sold for by Henderson, and for which two of the petitioners for appeal in this case were willing it should be sold. After the lapse of ten years, and when the rights of purchasers have intervened, and when the appellants acquiesced in said sale for four years, it would be to the last degree inequitable to set aside said sale, when a re-sale would inevitably result in a sacrifice of the property, consequent upon the general depreciation of real estate, especially in that portion of the state where this land is situate.
I am therefore of opinion that there is no error in the decree of the circuit court in refusing to set aside the sale made by its commissioner.
But the said circuit court erred in declaring that the creditors who were parties to the suit assailing the deed of Henderson prior to the rendition of the decree of 18th April 1868, should be paid pro rata, out of the balance of the fund, after satisfying the judgment creditors. Instead of directing a payment pro rata, the circuit court should have held that the creditors who filed the bill had acquired a lien from the date of its being filed, and those who came into said suit by petition, had acquired a lien from the date of the filing *489 of the same, and treating them as judgment creditors, they should have been paid according to their priorities ; and the balance, if any, distributed pro rata among the creditors at large.
For this error the decree of the circuit court must be reversed; and the cause remanded to said circuit court for further proceedings to be had therein according to the principles herein declared.
The deei’ee was as follows:
The court is of opinion, for reasons stated in writing ■and filed with the record, that the circuit court erred in holding that the creditors who were parties to the suit impeaching the fraudulent deeds of ffm. Henderson, Sr., before the decree of sale, were entitled to be paid pro rata out of the balance of the fund remaining in the hands of the court after paying the judgment creditors: This court being of opinion that the true rule of distribution of the funds in the hands of the court, was to pay, first, the judgment creditors of said Henderson, Sr., the amounts of their judgments obtained in his lifetime, according to their respective priorities. And secondly, the creditors who in his lifetime filed their bill to set aside the said fraudulent deeds, and those who came into said suit by petition before his death, regarding the liens of such creditors as subsisting from the date of filing said bill or petitions respectively; and the balance, if any, to be distributed pro rata among the other general creditors. Therefore it is decreed and ordered that so much of the decrees of the said circuit court as are inconsistent with the foregoing decree, be reversed and annulled, and that in all other respects they be affirmed; and that the appellant Slacum, out of the estate of his in *490 testate, in Ms hands to be administered, and the other appellants out of their own estate pay to the appellees their costs by them about their defence in Ms behalf expended; and that the cause be remanded to the said circuit court, for further proceedings to he had therein to a final decree in accordance with the principles herein declared. Which is ordered to be certified to the said circuit court of Lancaster county.
Staples J. did not concur in so much of the opinion as treats the filing of the bill as giving a- lien.
Decree reversed in favor of appellees.